**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PROformance Vend USA Incorported, <br><br> Plaintiff, <br><br> v. <br><br> Jones Lang LaSalle Incorporated, et al., <br><br> Defendants. | No. CV-24-02013-PHX-ROS <br><br> **ORDER** |

Plaintiff PROformance Vend USA, Inc. ("PROformance" or "Plaintiff") filed a Second Amended Complaint ("SAC") against Defendant Jones Lang LaSalle Americas, Inc. ("JLL" or "Defendant") alleging breach of contract, promissory estoppel, negligent misrepresentation, intentional misrepresentation, and breach of the covenant of good faith and fair dealing, in connection with an agreement to provide food and beverage vending services at several Amazon facilities. (Doc. 12, "SAC"). Defendant seeks dismissal of all five claims (Doc. 15, "Mot.") arguing the claims fail because no valid four-year contract was formed, nor was a four-year promise or representation ever made. Plaintiff responded (Doc. 16, "Resp."), and Defendant replied (Doc. 19, "Reply"). Because Plaintiff adequately pled facts to support all claims, the motion will be denied.

**I.   BACKGROUND**

The following facts are derived from the SAC, along with the Request for Proposal ("RFP") and subsequent communications by the parties attached to the Motion.[1]

---

[1] Although Plaintiff did not attach the RFP and accompanying communications between the parties to the SAC, the Court can consider them when ruling upon this Motion because

On March 1, 2022, Defendant sent Plaintiff and other interested parties a Request for Information ("RFI") leading to an RFP regarding food vending services at several Amazon facilities in Arizona. (SAC ¶ 4). In April 2022, Defendant prepared and sent to Plaintiff the RFP for Food Services. (*Id.* ¶ 7). The RFP stated the "Anticipated Contract Term" was for a period of "Four (4) years." (*Id.* ¶ 9; Doc. 15-1, Ex. 1, "RFP" § 6, Anticipated Contract Term). The RFP also stated,

> This RFP documentation does not constitute and should not be interpreted as a legal contract between JLL and your company. The submission of a proposal to JLL and the evaluation of the proposal by JLL does not represent any kind of legal contract, even if all the required services, functions and features stated in the RFP are fully met.

(RFP § 6, Non-Disclosure). It further provided,

> This RFP has been prepared by Jones Lang LaSalle and is being furnished so that potential Suppliers might prepare a Proposal to address the business requirements. The information contained in this RFP has been prepared to guide interested parties in making their own evaluation and does not purport to contain all information that a Supplier may desire. While every attempt will be made to provide thorough, accurate information, Jones Lang LaSalle and/or AMAZON shall have no liability for any inaccuracies that may be contained in this RFP, or any accidental omissions from this RFP. Much of the information is based on historical trends, which may or may not repeat themselves. Nothing contained in this RFP can be relied upon as a commitment, guarantee or representation regarding future events of performance.

(RFP § 6, RFP Information). Proposals submitted in response to the RFP were to be "considered [as] an offer to contract by the Supplier." (RFP § 6, Supplier Responsibility). However, the RFP granted Defendant discretion to "[d]epart from or modify the proposed framework and/or any other procedures in relation to the RFP." (RFP § 6, Disclaimers).

On September 8, 2022, Defendant sent Plaintiff an email containing a letter of intent to award Plaintiff "full Vending/Kitchenette operations" for eight Amazon facilities. (SAC

---

"plaintiff refers extensively to the document[s] or the document[s] form[] the basis of the plaintiff's claims." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

¶ 13; Doc. 15-1, Ex. 3, "LOI"). The letter stated, in relevant part,

> Our District 4 Food Program Manager will be working in conjunction with myself and the BB/YB FM to align on an install schedule. The goal would be to have all sites under the PROformance umbrella by the end of 2022.
>
> Your interest in supporting Jones Lang LaSalle and AMAZON is greatly appreciated and we look forward to a successful long-term business relationship. We will be sending you the necessary contract forms for execution and contacting your [*sic*] shortly to establish a transition meeting.

(LOI). The parties corresponded in September and October regarding equipment and installation plans. (SAC ¶¶ 16–20). Plaintiff twice emailed Defendant inquiring about the status of the contract. (*Id.* ¶¶ 17, 21).

On October 24, 2023, Defendant's agent emailed Plaintiff stating, "I want to ensure you will have all the equipment ready for install in January." (*Id.* ¶ 22). And on November 21, 2022, another of Defendant's agents emailed Plaintiff to ensure certain items were on Plaintiff's product list to order. (*Id.* ¶ 23). Relying on these instructions, Plaintiff secured financing to fund the project in order to meet the January and February 2023 deadlines with the understanding that it would have a four-year term to recoup its overhead and expenses. (*Id.* ¶¶ 24–25). Throughout this time, Plaintiff was unaware the contract term would be less than four years and would contain a provision allowing for a 30-day notice of termination without cause provision. (*Id.* ¶ 27).

Plaintiff completed its install work and began providing food and beverage vending services at various Amazon locations in November 2022 and thereafter. (SAC ¶ 28). In late November 2022, Defendant, for the first time, provided Plaintiff a draft of a Service Contract Agreement with an effective date of November 21, 2022. (*Id.* ¶ 30). The Agreement contained a termination date three years later (instead of the "anticipated" term of four years stated in the RFP), along with a provision allowing Defendant to terminate the contract at any time upon 30-days' written notice and without any cause. (*Id.* ¶¶ 30–31).

After reviewing the contract draft, Plaintiff insisted on a four-year term without the 30-day termination provision but was told by Defendant that it could not offer a four-year

term because Defendant's contract with Amazon ended before then and Defendant did not know whether it would continue being Amazon's property manager. (*Id.* ¶ 32). However, Plaintiff was told by Defendant's employees to "keep moving forward with the installs and not to worry the written contract wasn't signed yet because they would get the contract that was promised by the RFP." (*Id.* ¶ 33). Nevertheless, Defendant continuously refused to provide a contract on the terms insisted by Plaintiff in reliance on the RFP, all while Plaintiff proceeded to secure financing and provide vending services at the Amazon locations. (*Id.* ¶ 36–37). On July 1, 2024, after 18 months of providing vending services, Plaintiff received a letter from Defendant stating, "this letter will serve as JLL's termination notice of our business relationship with PROformance for the Amazon account." (*Id.* ¶ 39).

## II.    MOTION TO DISMISS

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" has not adequately shown the pleader is entitled to relief. *Id.* at 679. Although federal courts ruling on a motion to dismiss "must take all of the factual allegations in the complaint as true," they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

### A.    Breach of Contract (Count I)

Defendant asserts Plaintiff's breach of contract claim fails because the parties never formed a four-year contract. Plaintiff contends a valid and enforceable contract was formed because Plaintiff's response to the RFP incorporating the terms of the RFP served as an offer, and Defendant's letter of intent to award vending operations to Plaintiff served

- 4 -

as an acceptance of that offer. The Court finds the parties formed a valid and enforceable contract despite a formal, written agreement, based on the parties' performance pursuant to the terms in the RFP.

"To state a claim for breach of contract under Arizona law, a plaintiff must allege (1) the existence of a contract between the parties; (2) defendant's breach of the contract; and (3) plaintiff's resulting damages." *Synder v. HSBC Banks, USA, N.A.*, 873 F. Supp. 2d 1139, 1148 (D. Ariz. 2012). In order to establish the existence of a contract, "there must have been an offer, acceptance of the offer, and consideration … and [the parties] must have intended to be bound by the agreement." *Goodman v. Physical Res. Eng'g, Inc.*, 270 P.3d 852, 855 (Ariz. Ct. App. 2011) (internal citations omitted). A binding agreement "must be definite and certain so that the liability of the parties may be exactly fixed." *Rogus v. Lords*, 804 P.2d 133, 136 (Ariz. App. Ct. 1991); *see AROK Const. Co. v. Indian Const. Services*, 848 P.2d 870, 877 (Ariz. App. Ct. 1993) ("Only '[i]f the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken' does a contract not exist." (citing Restatement (Second) of Contracts § 33 (1981)).

Generally, agreements to agree such as letters of intent do not form enforceable contracts where all essential elements of the future contract are not set forth. *T. D. Dennis Builder, Inc. v. Goff*, 418 P.2d 367, 370 (Ariz. 1966). However, "[a] contract may be formed, even if not formally executed, if it is clear the parties intended to bind themselves to the terms." *Johnson Intern., Inc. v. City of Phoenix*, 967 P.2d 607, 611 (Ariz. App. Ct. 1998) (citing *AROK*, 174 Ariz. at 297). "A court may look to surrounding circumstances and the conduct of the parties to determine the parties' intent." *Id.* (citing *Burkett v. Morales*, 626 P.2d 147, 148 (Ariz. App. Ct. 1981).

The circumstances alleged here make clear the parties intended to bind themselves to an informal agreement. Indeed, the parties maintained a business relationship under the terms of the RFP without ever effectuating a formal agreement. Before Defendant presented Plaintiff with a draft of the formal agreement, Defendant requested Plaintiff order equipment and prepare for installation to meet certain deadlines—tasks that required

Plaintiff to obtain financing and act expediently without waiting for a formal agreement—to which Plaintiff complied. The termination provisions of the formal draft agreement differed significantly from the expectations created under the RFP, to Plaintiff's detriment. Despite assurances from Defendant that the requested terms would be implemented and Defendant's ultimate failure to do so, Plaintiff performed services for 18 months until Defendant allegedly sought to unilaterally terminate the parties' business relationship pursuant to terms explicitly rejected by Plaintiff. The conduct of the parties indicates performance was not predicated on the reaching of a formal agreement, and thus, the letter of intent was sufficient to create an enforceable contract. Finding otherwise would contravene Arizona's "policy of the law to uphold agreements." *AROK*, 848 P.2d at 875.

The *AROK* court eloquently explained this paradigm:

> The enforcement of incomplete agreements is a necessary fact of economic life. Business people are not soothsayers, and can neither provide in advance for every unforseen contingency nor answer every unasked question regarding a commercial agreement ... [P]arties may want to bind themselves and at the same time desire to leave some matters open for future resolution in order to maintain flexibility. Thus, courts are often presented with incomplete bargains when the parties intend and desire to be bound ... Refusing the enforcement of obligations the parties intended to create and that marketplace transactions require hardly seems the solution.

*AROK*, 848 P.2d at 876. Plaintiff has sufficiently pled a claim for breach of contract, and Defendant's motion is denied as to Count I.

**B.      Promissory Estoppel (Count II)**

"The need for a particular remedy may sometimes become apparent as a result of part performance or other action in reliance on an indefinite agreement, even though the original uncertainty remains. The appropriate remedy may be non-contractual." RESTATEMENT (SECOND) OF CONTRACTS § 34 cmt. d (1981). Defendant argues it did not promise Plaintiff a four-year contract. But the SAC alleges otherwise.

"A promissory estoppel claim allows a plaintiff to recover for detrimental reliance on a promise." *Satamian v. Great Divide Insurance Co.*, 545 P.3d 918, 926 (Ariz. 2024). Under Arizona law, a promissory estoppel claim "requires 'a promise, which the promissor

should reasonably foresee would cause the promisee to rely, upon which the promisee actually relies to his detriment.'" *Id.* (quoting *Contempo Constr. Co. v. Mountain States Tel. & Tel. Co.*, 736 P.2d 13, 16 (Ariz. Ct. App. 1987).

The alleged assurances of a four-year term made by employees of Defendant serve as the basis for a promissory estoppel claim. Plaintiff alleges that after learning about Defendant's unwillingness to enter into a four-year contract and raising the issue with Defendant, several of its employees "told Plaintiff to keep moving forward with the installs and not worry the written contract wasn't signed yet because they would get the contract that was promised by the RFP." (SAC ¶ 33). Plaintiff allegedly relied on the promise of a four-year term without the 30-day termination provision in continuing to perform the obligations requested by Defendant, to its detriment. (*Id.* ¶¶ 53–57). Thus, Plaintiff sufficiently pled a claim for promissory estoppel, and Defendant's motion is denied as to Count II.

### C. Negligent and Intentional Misrepresentation (Counts III and IV)

Defendant asserts Plaintiff inadequately pled its claims for negligent and intentional misrepresentation. The Court finds both claims were adequately pled.

In Arizona, the elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage. *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co*., 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014). An omission of a fact may also serve as the basis for a negligent misrepresentation claim. *McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992).

Defendant argues the anticipated contract term of four years stated in the RFP cannot form the basis of a negligent misrepresentation claim because "[a] promise of future conduct is not a statement of fact capable of supporting a claim for negligent

misrepresentation." (Mot. at 6) (quoting *McAlister*, 829 P.2d at 1261. While this is true, Plaintiff adequately alleges Defendant made a misrepresentation by omission by not disclosing, before Plaintiff began arranging for performance, that Defendant's contract with Amazon was set to lapse in three years, rendering impossible a four-year term between the parties. The SAC alleges the anticipated contract term in the RFP "was included to induce bidders to respond to the RFP knowing they would have at least four years to recoup their substantial investments." (SAC ¶ 63). Thus, Plaintiff sufficiently alleges that Defendant failed to exercise reasonable care in not disclosing to Plaintiff that such a material term was not possible before Plaintiff began relying on this omission to its detriment. Plaintiff also sufficiently alleges that, at relevant times before it completed its install work and began providing food and beverage vending services at various Amazon locations, Defendant failed to disclose the 30-day termination provision it intended to include in the parties' formal agreement. According to the SAC, Defendant therefore knew Plaintiff had no other information to rely on when beginning performance besides the contents of the RFP and omitted material facts during that time.

Relatedly, but distinctly, the elements of intentional misrepresentation in Arizona are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in a manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon, and (9) his consequent and proximate injury." *Wagner v. Casteel*, 663 P.2d 1020, 1022 (Ariz. Ct. App. 1983). The analysis here is substantially similar to the negligent misrepresentation claim. In addition to pleading the requisite elements above, Plaintiff alleges Defendant acted intentionally in omitting information about the impossibility of a four-year term and the inclusion of a 30-day termination provision. (SAC ¶ 70). Thus, Plaintiff sufficiently pled claims for negligent and intentional misrepresentation, and Defendant's motion is denied as to Counts III and IV.

/ / /

### D.   Breach of the Covenant of Good Faith and Fair Dealing (Count V)

Count V of the SAC alleges Defendant breached the implied covenant of good faith and fair dealing by "refusing to give a four-term and by including a right of Defendant to cancel the contract even for no reason, simply by giving 30 days' notice, and then by outright cancelling the agreement after 18 months."  (SAC ¶ 77).  "The law implies a covenant of good faith and fair dealing in every contract."  *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986).  "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship."  *Id.*  While a breach of the implied covenant is not dependent on a breach of an express contractual term, *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434–35 (Ariz. Ct. App. 2002), it is dependent on the existence of a valid contract.

Defendant argues Plaintiff failed to plead a viable breach of the covenant of good faith and fair dealing claim because the claim merely realleges Plaintiff's breach of contract claim.  But both claims are not mutually exclusive, and they were not pled as such.  *See Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 29 (2002) ("A party may breach an express covenant of a contract without breaching the implied covenant of good faith and fair dealing.  Conversely, ... a party may ... breach its duty of good faith without actually breaching an express covenant in the contract.").

Plaintiff alleges under the contract formed the parties, Defendant had a duty to act fairly and in good faith which required that it not do anything that would prevent Plaintiff from receiving the benefits of the agreement.  And "by refusing to agree to the terms of the contract, by refusing to give a four-year term and by including a right of [Defendant] to cancel the contract even for no reason, simply by giving 30 days' notice, and then by outright cancelling the agreement after 18 months, [Defendant] breached its duty of good faith and fair dealing."  (Reply at 16).  Thus, Plaintiff sufficiently pled a claim for breach of the covenant of good faith and fair dealing, and Defendant's motion is denied as to Count V.

\* \* \*

Accordingly,

**IT IS ORDERED** Defendant's Motion to Dismiss Second Amended Complaint (Doc. 15) is **DENIED**.

Dated this 4th day of February, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge